IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FLOYD ROGERS, III,                    §
                                      §
            Plaintiff,                §
                                      §
V.                                    §          No. 3:12-cv-2458-M-BN
                                      §
SHERIFF JOHNNY BROWN,                 §
ET AL.,                               §
            Defendants.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation on Defendants' Motion for Summary Judgment [Dkt. No. 36]. Defendants' motion for summary judgment should be granted in part and denied in part, and the Court should appoint counsel from the civil *pro bono* panel to assist Plaintiff's prosecution of his remaining claims.

**Background**

This is a *pro se* civil rights action brought by Floyd Rogers, III, a Texas prisoner, against Ellis County Sheriff Johnny Brown, an unnamed deputy sheriff, the lieutenant and two sergeants in charge of the Ellis County Detention Center, nine detention officers, and two employees of the jail's medical center. On or about July 27, 2010,

Plaintiff was involved in an altercation with Officer Hammonds and two unnamed detention officers (later identified as Officer Bobby Runnels and Officer Benjamin Parten) at the Ellis County Detention Center. *See* Dkt. No. 3 at 12; Dkt. No. 9 at Question 7. According to Plaintiff's allegations, Officers Hammonds and Runnels entered his cell and began to harass him. *See* Dkt. No. 9 at Question 7. Although Plaintiff was not resisting, Hammonds placed him in a headlock, Officer Runnels tasered him, and the officers assaulted him by jumping on top of him, twisting his arm, and dislocating his shoulder. *See* Dkt. No. 3 at 12. Plaintiff was then restrained in a chair while Officer Kenneth Merry "used his thumbnails to rip both Plaintiff's ears loose from his scalp ...[,] slammed Plaintiff's head against the chair several times, began beating upon Plaintiff's head and face, and then covered the nose and mouth causing suffocation and the Plaintiff passed out." *Id.* at 13; *see also* Dkt. No. 9 at Question 8. During Officer Merry's assault, two unnamed officers (later identified as Officers Cory Poe and Craig Campise) "began beating on Plaintiff and twisting [his] fingers" through a gap in the chair. Dkt. No. 3 at 13.. An unnamed nurse (later identified as Nurse Kate) who witnessed the assault refused to provide medical assistance or necessary medications. *See id.* at 13.

Just a few days later, on or about August 1, 2010, an unidentified medical technician from the jail's medical center and Officer Sellers refused Plaintiff his heart medication and psychotropic drugs. *See* Dkt. No. 3 at 15; Dkt. No. 9 at Question 10. Plaintiff was then allegedly assaulted by Officer Sellers, who grabbed his bandaged wrist, slammed his head and upper back against the floor, began beating Plaintiff's

face and chest, and dropped his security radio onto Plaintiff. *See* Dkt. No. 3 at 16; Dkt. No. 9 at Question 10. Plaintiff claims that he was beaten by Sellers and an officer later identified as Officer Chris Coffey, while Officer Wendy Hammonds permitted two other inmates to enter the cell and assist in the officers' assault. *See* Dkt. No. 3 at 16-17; Dkt. No. 9 at Questions 9 & 10.

Plaintiff now sues these defendants for use of excessive force and deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. Plaintiff also names as defendants Sheriff Johnny Brown, an unnamed deputy sheriff, Sergeant Amie Buchanan, Sergeant Bobby Cooper, Lieutenant Tommie Eberthart, and another unnamed detention officer, all of whom allegedly failed to prevent the assaults and neglected to investigate and remedy Plaintiff's grievances. *See* Dkt. No. 3 at 5-7; Dkt. No. 9 at Questions.3-6. He also claims that he was denied pain medication and the use of a crutch on August 2, 2010 when he was transported to the custody of the Texas Department of Criminal Justice. *See* Dkt. No. 3 at 18-19.

On July 20, 2012, Plaintiff tendered a complaint to the district clerk and filed an application to proceed *in forma pauperis*. Because the information provided by Plaintiff indicates that he lacks the funds necessary to prosecute this case, the Court granted leave to proceed *in forma pauperis* and allowed the complaint to be filed. The Court then sent written interrogatories to Plaintiff in order to obtain additional information about the factual basis of this suit. Plaintiff answered the interrogatories on August 21, 2012. The Court ordered the Marshal's Service to serve process on

Defendants James Hammonds, Kenneth Merry, Wendy Hammonds, Danny Sellers, Johnny Brown, Tommie Eberthart, Amie Buchanan, and Bobby Cooper, pursuant to Federal Rule of Civil Procedure 4(c)(3); however, the Court was unable to identify and order service upon the unnamed deputy sheriff, five individuals referred to as "John Doe" detention center officers, and the two individuals referred to as "Jane Doe" employees of the medical staff of the Ellis County Detention Center. *See* Dkt. No. 15. Plaintiff has not sought leave to name any of the "John Doe" defendants that he has now identified.

All defendants who have been served now jointly move for summary judgment. *See* Dkt. No. 36. They allege all claims of excessive force and denial of medical care are barred by qualified immunity and that Plaintiff has failed to establish supervisory liability against Sheriff Brown, Lieutenant Eberthart, Sergeant Buchanan, and Sergeant Cooper. *See id.* After the Court permitted limited discovery on the issue of qualified immunity, *see* Dkt. No. 46, Plaintiff filed a response to Defendants' motion, *see* Dkt. No. 61. Defendants were permitted to submit a reply brief, *see* Dkt. No. 54, but did not do so. This motion is ripe for determination.

### Legal standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the

evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its

case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no

genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992). The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994). Here, Plaintiff's complaint and his interrogatory answers are verified. *See* Dkt. No. 3 at 27; Dkt. No. 9 at 17.

Defendants move for summary judgment on their qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport,* 390 F. App'x 379, 383, 2010 WL 3190709, at *3 (5th Cir. Aug. 12, 2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step analysis to determine whether government officials are entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002); *see also Kinney v. Weaver,* 367 F.3d 337, 356

(5th Cir. 2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002). This burden applies both at trial and on summary judgment. *See id.*; *see also Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *See id.*

## Analysis

Supervisory Liability Claims

The undersigned initially concludes that Plaintiff has failed to state a claim for relief against Sheriff Brown, the unnamed deputy sheriff, Lieutenant Eberthart, Sergeant Buchanan, and Sergeant Cooper. As supervisors, these Defendants are liable only if they (1) affirmatively participated in acts that caused a constitutional deprivation or (2) implemented unconstitutional policies that resulted in injury to Plaintiff. *See Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff does not allege that any of these defendants used excessive force against him or was

deliberately indifferent to his serious medical needs, and Plaintiff does not identify a policy, custom, or practice adopted or implemented by these Defendants that sanctions or condones the constitutional violations made the basis of ths suit. Instead, Plaintiff alleges that these Defendants are legally responsible for the operation of the prison and the actions of their subordinates and that these Defendants failed to investigate and remedy his grievances. *See* Dkt. No. 3 at 5-7; Dkt. No. 9 at Questions 3-6.

However, there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Even if these Defendants knew of misconduct against inmates or failed to investigate Plaintiff's grievances, this conduct alone does not give rise to liability under section 1983. *See Milazzo v. Young*, No. 6:11-cv-350, 2011 WL 6955710, at *4 (E.D. Tex. Dec. 11, 2011), *rec. adopted*, 2012 WL 28102 (E.D. Tex. Jan. 4, 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009)) (supervisors not liable merely because they know of or acquiesced in misconduct by a subordinate); *see also Mitchell v. Valdez*, No. 3-07-CV-0036-B, 2007 WL 1228061, at *2 & n.1 (N.D. Tex. Apr. 25, 2007) (supervisors not responsible for the constitutional violations of their subordinates or for failing to take corrective action in response to grievances).

Excessive Force Claims

The vast majority of Plaintiff's claims surround the two incidents of alleged excessive force. Plaintiff contends that, on July 27, 2010, Officers James Hammonds and Bobby Runnels viciously assaulted him without provocation, and then, when Plaintiff was restrained in a chair, he was beaten and tortured by Officers Kenneth

Merry, Cory Poe and Craig Campise. *See* Dkt. No. 3 at 11-14; Dkt. No. 9 at Questions 7, 8, & 11; Dkt. No. 61 at 45-46. Defendants provide extensive summary judgment evidence to rebut these allegations. They contend that Plaintiff attempted to commit suicide in the early morning hours of July 27, 2010 by using a razor to cut deep lacerations to his left and right wrists and carving a pentagram into his chest and that, when the officers tried to keep him from further harm, Plaintiff attacked Officer James Hammonds and forcefully resisted the officers. *See* Dkt. Nos. 36-3, 36-4, 36-7, & 36-8. They deny the use of excessive force. *See id.*

Plaintiff claims that, on August 1, 2010, following a dispute about his medications and without provocation, Officer Sellers grabbed his injured wrist, then Officers Sellers and Chris Coffey both slammed his head and upper back to the floor and began to beat Plaintiff's head and chest. *See* Dkt. No. 3 at 15-16; Dkt. No. 9 at Question 10; Dkt. No. 61 at 46-47. He further claims that Officer Wendy Hammonds "overrode the security doors" in order to allow two inmates to participate in the assault. *See* Dkt. No. 3 at 16-17; Dkt. No. 9 at Question 9. Defendants dispute these assertions, providing affidavits indicating that Plaintiff became irate when instructed to put on his clothes, threatened suicide, and tied a noose around his own neck. *See* Dkt. No. 36-11; Dkt. 61 at 34. When the officers attempted to restrain him, Plaintiff struck Officer Sellers and violently resisted them. *See id.* The officers again deny using any force above that necessary to maintain discipline.

"'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian,* 503

U.S. 1,5 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). In order to determine whether a prisoner has been subjected to such a constitutional violation, the Court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. This inquiry has two components: an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer. *See id.* at 7-8. The Court will look to five nonexclusive, so-called *Hudson* factors to make this determination: "'1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response.'" *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)). The core inquiry focuses on the nature of the force used; Plaintiff need not show that his injuries were significant, although the extent of the injury may provide some indication of the amount of force applied and may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *See Wilkins v. Gaddy,* 559 U.S.34, 37-39 & n.2 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38. The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995).

According to the facts that Plaintiff alleges, Officers James Hammonds, Bobby Runnels, Kenneth Merry, Cory Poe, Craig Campise, Danny Sellers, and Chris Coffey participated in unprovoked assaults upon Plaintiff for the purpose of maliciously and sadistically causing him harm, rather than "a good-faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Plaintiff claims that an officer (later identified as Officer J. Pillow) failed to intervene to protect him from the first assault, *see* Dkt. No. 3 at 9 & 22, and that Officer Wendy Hammonds overrode the security doors in order to allow two inmates to participate in the second attack, *see* Dkt. No. 9 at Question 9. As a result of the conduct of these nine officers, he sustained significant physical injuries. *See* Dkt. No. 9 at Questions 11-13.

Although Defendants have provided extensive evidence to refute Plaintiff's factual assertions, on summary judgment, the Court must review all evidence in the light most favorable to Plaintiff, as the non-movant. *See Rosado v. Deters,* 5 F.3d 119, 123 (5th Cir. 1993); *see also Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000)) (court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment). Viewing the allegations and summary judgment evidence most favorably to Plaintiff, the summary judgment evidence shows disputed issues of fact material to whether the officers' conduct was objectively reasonable in light of the surrounding circumstances. *See Hale,* 45 F.3d at 918-19.

Thus, the undersigned concludes that Plaintiff has sufficiently alleged a violation of a clearly-established constitutional right of which a reasonable person

-12-

would have known. Summary judgment is not appropriate to Plaintiff's excessive force claims.

<u>Denial of Medical Care</u>

Defendants also raise the defense of qualified immunity to Plaintiff's denial of medical care claim. This claim is governed by the Eighth Amendment's deliberate indifference standard. In order to establish a constitutional violation based on the denial of medical care, a plaintiff must show that jail officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). This, in turn, requires proof that a state actor was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *See Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir. 1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)). Delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). Nor does an incorrect diagnosis, disagreement with medical treatment, or the failure to provide additional disagreement with medical treatment constitute deliberate indifference. *See Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997). Rather, a plaintiff must show that the medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

The summary judgment evidence establishes that there is no genuine dispute of material fact that, after both altercations, Plaintiff was provided prompt medical attention. *See* Dkt. No. 36-3 at 3; Dkt. No. 36-4 at 4; Dkt. No. 36-6 at 3-4; Dkt. No. 36-7 at 3-4; Dkt. No. 36-9 at 3-4 & 16; Dkt. No. 36-11 at 4-5. In fact, Plaintiff admits that he received medical care in both instances. *See* Dkt. No. 3 at 13 & 17-18; Dkt. No. 9 at Questions 13 & 15; Dkt. No. 61 at 9 & 41-42.

Plaintiff essentially claims that he did not receive the care that he believes that he was due based on his own self-diagnoses. That is, he claims that during the July 27, 2010 incident, he was denied medical care by Nurse Kate when she refused to order x-rays or an EKG and did not provide him the medication Nitro after she determined that his vital signs were normal and he was not having a heart attack. *See* Dkt. No. 3 at 10 & 13; Dkt. No. 9 at Questions 14-15; Dkt. No. 61 at 9. Similarly, he faults the unnamed medical technician for delaying his medication on August 1, 2010 based upon what he believes to be a false claim that he was not properly dressed. *See* Dkt. No. 3 at 15; Dkt. No. 9 at Question 10. However, Plaintiff admits that he received his medications and additional care soon thereafter. *See* Dkt. No. 3 at 17-18. Although Plaintiff faults Sergeant Cooper and the medical technician for failing to provide painkiller or a crutch after he received his morning medications on August 2, 2010, this conduct occurred during his transport to the Texas Department of Criminal Justice, where he received medical care. *See* Dkt. No. 3 at 18-19; Dkt. No. 9 at Question 6.

Deliberate indifference is "an extremely high standard to meet." *Domino*, 239 F.3d at 756. "[T]he decision whether to provide additional treatment 'is a classic

example of a matter for medical judgment.'" *Id.* (quoting *Estelle*, 429 U.S. at 107). Furthermore, "the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Id.* (quoting *Farmer*, 511 U.S. at 838).

Here, Plaintiff was treated after both incidents and received his medications as prescribed. Accepting his allegations as true, there is no genuine dispute of material fact that Nurse Kate, Sergeant Cooper, the unnamed medical technician, and the jail guards did not deny Plaintiff medical care; at most, they refused to provide him medications that they believed were not warranted or delayed his treatment until he complied with prison rules. This conduct does not constitute the "wanton disregard for any serious medical needs" that is prohibited by the Eighth Amendment. *Domino*, 239 F.3d at 756. Such delay in treatment does not constitute an Eighth Amendment violation. *See Mendoza,* 989 F.2d at 195.

Plaintiff has not alleged facts that meet the extremely high deliberate indifference standard based on the alleged conduct of the defendants. Because Plaintiff has not pled or alleged sufficient facts to establish a claim of deliberate indifference, all defendants are entitled to summary judgment on this claim based on qualified immunity. *See, e.g.*, *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)).

### Recommendation

Defendants' Motion for Summary Judgment [Dkt. No. 36] should be granted as to Plaintiff's claims for denial of medical care and as to all allegations against Sheriff Brown, the unnamed deputy sheriff, Lieutenant Eberthart, Sergeant Buchanan, and Sergeant Cooper. Defendants' Motion for Summary Judgment [Dkt. No. 36] should be denied as to Plaintiff's excessive force claims against Defendants James Hammonds, Kenneth Merry, Wendy Hammonds, and Danny Sellers. Upon entry of an order adopting these findings, conclusions, and recommendation, the Court should appoint counsel from the civil *pro bono* panel to assist Plaintiff in prosecuting his remaining claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: July 15, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE