IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FLOYD ROGERS, III,                    §
                                      §
          Plaintiff,                  §
                                      §
V.                                    §          No. 3:12-cv-2458-M-BN
                                      §
SGT. AMIE BUCHANAN, ET AL.,           §
                                      §
          Defendants.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge

for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of

reference.

Plaintiff Floyd Rogers, III's second amended complaint [Dkt. No. 133], filed with

leave of Court on September 15, 2014, *see* Dkt. No. 130, adds the following eight

defendants: Officer Bobby Runnels, Officer Cory Poe, Officer Craig Campise, Officer

J. Pillow, Officer Chris Coffey, Officer Benjamin Parten, Jane Doe #1 ("Nurse Kate"),

and Jane Doe #2 ("Med Tech"). *See* Dkt. No. 133 at 3-4. In their answer to the second

amended complaint, these eight defendants asserted the affirmative defense of

qualified immunity, *see* Dkt. No. 139 at 13, and have now also moved for summary

judgment as to that defense, *see* Dkt. Nos. 145 & 146.

The undersigned magistrate judge now issues the following findings of fact,

conclusions of law, and recommendation as to their motion.

-1-

## Background

Although this case has a lengthy procedural history, the Court focuses on the factual allegations concerning the above-mentioned defendants as stated in Plaintiff's second amended complaint, in which Plaintiff asserts claims of excessive use of force, excessive force – failure to intervene, and conspiracy, all in violation of 42 U.S.C. § 1983, against Officers Runnels, Poe, Campise, Pillow, Coffey, and Parten, *see* Dkt. No. 133 at 16-25, and claims of excessive force – failure to intervene and conspiracy, in violation of Section 1983, against the Jane Doe Defendants, *see id.* at 19-25.

Plaintiff alleges that the following events supporting his claims against Defendants Runnels, Poe, Campise, Pillow, Parten, and Nurse Kate occurred on July 27, 2010: Officer Runnels, along with co-defendant Officer James Hammonds, entered Plaintiff's cell at the Ellis County Detention Center multiple times to harass him. *See* Dkt. No. 133, ¶¶ 23 & 24. Officer Hammonds then cornered Plaintiff in the shower area, and, when Plaintiff – in fear of harm – attempted to exit, Officer Hammonds placed him in a headlock. *See id.*, ¶¶ 24 & 25. Then, either Officer Runnels or, alternatively, Officer Parten tasered Plaintiff while he was on his back restrained by Officer Hammonds, *See id.*, ¶ 25. Relatedly – depending on which detention officer actually tasered Plaintiff – either Officer Runnels or Officer Parten failed to intervene to stop this excessive use of force. *See id.*, ¶ 26. After Plaintiff was tasered, Officer Runnels and/or Officer Parten jumped on top of Plaintiff, and the officers twisted Plaintiff's arm and dislocated his shoulder. *See id.*, ¶ 27. After Officers Hammond and Runnels secured Plaintiff in a restraint chair, co-defendant Officer Kenneth Merry

began to assault Plaintiff. Nurse Kate – who briefly tended to Plaintiff's injuries sustained prior to the alleged assault of Officer Merry – and Officers Poe and Campise were present. *See id.*, ¶¶ 29-31. Neither Nurse Kate nor Officers Poe and Campise did anything to stop Officer Merry or call a supervisor. *See id.*, ¶¶ 30-31. In fact, Officers Poe and Campise "began beating on Plaintiff as well, and twisted Plaintiff's fingers, through a small gap at the base of the chair to cause pain and injury." *Id.*, ¶ 32. Officer Pillow was also present for the assault on Plaintiff by Officers Merry, Poe, and Campise and also failed to take reasonable steps to end the assault. *See id.*

Plaintiff next alleges that, on August 1, 2010, Med Tech refused Plaintiff his medications – because she claimed that Plaintiff was not dressed – and then stood by as co-defendants Officers Sellers and Coffey beat Plaintiff. *See id.*, ¶¶ 41-46; *see also id.*, ¶ 46 ("Coffey grabbed Plaintiff's upper body from behind (exactly the same way as Sellers had done) and slammed him, by his head and upper back first, onto the floor. The beating continued, again, as the Plaintiff was beat in the face and chest with fists and weapons and was stomped on, too by Sellers and Coffey."). Plaintiff claims that he passed out more than once during this beating and that, after he reawoke one time, he witnessed maximum-security inmates come into his protective-custody cell to contribute to beating him. *See id.*, ¶¶ 45-47. Plaintiff further alleges that, in relating to supervisors what happened, Med-Tech "covered up the truth to give more credence to the story that Plaintiff had been uncooperative." *Id.*, ¶ 52.

The undersigned now concludes that the pending motion for summary judgment on the issue of qualified immunity [Dkt. No. 145] should be granted in part and denied

in part as explained below.

## Legal Standards

"The doctrine of qualified immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

While review of a motion for summary judgment based on qualified immunity is accomplished in two steps, a court may conduct the following examination "in any order." *Luna*, 773 F.3d at 718 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (there is "discretion to decide which of the two steps of qualified immunity to address first").

One prong of the analysis requires the Court to decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna*, 773 F.3d at 718 (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Put another way, the question is "whether the plaintiff has alleged a violation of a

constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

The other prong requires the Court to decide "'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna*, 773 F.3d at 718 (quoting *Flores*, 381 F.3d at 395). Even if a government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Taken together, this prong of the analysis requires the Court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511; *see also Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks and brackets omitted from original))); *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly established law[ and t]hen ... determine whether the defendant's actions were objectively reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))).

As to whether the law at the time of an incident was clearly established, even if the Court assumes that each right that a plaintiff asserts did apply in his or her case, each right must be defined at the appropriate level of specificity for the Court to determine that the right was "clearly established." While "'a case directly on point'" is not necessarily required to "conclud[e] that the law is clearly established, '[ ] existing

precedent must have placed the statutory or constitutional question beyond debate.'"

*Stanton*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S. Ct. at 2085). The Court, moreover,

may not "'define clearly established law at a high level of generality,' since doing so

avoids the crucial question whether the official acted reasonably in the particular

circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)

(quoting *al-Kidd*, 131 S. Ct. at 2084).

Essential to the "clearly-established inquiry is 'fair warning,'" which requires the

Court to "ask 'not only whether courts have recognized the existence of a particular

constitutional right, but also ... whether that right has been defined with sufficient

clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan*

*v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (respectively quoting *Hope v.*

*Pelzer*, 536 U.S. 730, 741 (2002); *McClendon v. City of Columbia*, 305 F.3d 314, 331

(5th Cir. 2002) (en banc) (per curiam)).

In sum,

> [w]hen deciding whether the right allegedly violated was "clearly
> established," the court asks whether the law so clearly and
> unambiguously prohibited the conduct that every reasonable official
> would understand that what he is doing violates the law. Answering in
> the affirmative requires the court to be able to point to controlling
> authority – or a robust consensus of persuasive authority – that defines
> the contours of the right in question with a high degree of particularity.
> This requirement establishes a high bar. When there is no controlling
> authority specifically prohibiting a defendant's conduct, the law is not
> clearly established for the purposes of defeating qualified immunity.

*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (citing *Morgan*, 659 F.3d at 371-72)

(internal citations and quotation marks omitted).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon*, 305 F.3d at 323; *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)); *see also Brooks v. City of West Point*, 18 F. Supp. 3d 790, 794 (N.D. Miss. 2014) ("The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense." (citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

"[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Therefore, even where the qualified immunity defense is raised by motion for summary judgment, the Court "must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity." *Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. Oct. 5, 2012) (per curiam) (citing *Backe*, 691 F.3d at 648; *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995)). This "demands more than bald allegations and conclusionary statements." *Wicks*, 41 F.3d at 995. A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Id.* "In the summary-judgment posture, the Court 'looks to the evidence before it (in the light most favorable to the plaintiff).'" *Brooks*, 18 F. Supp. 3d at 795 (quoting

*McClendon*, 305 F.3d at 323 (in turn quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996))) (internal quotation marks omitted).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)). Although summary judgment ultimately may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id.*

## Analysis

Plaintiff asserts that the six correctional officer defendants now moving for summary judgment on the affirmative defense of qualified immunity – Officers Runnels, Parten, Poe, Campise, Pillow, and Coffey, as well as other defendants – used excessive force against him in violation of 42 U.S.C. § 1983. *See, e.g.,* Dkt. No. 133, ¶¶ 62-65.

"'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and

unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). To determine whether a prisoner has been subjected to such a constitutional violation, the Court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. This inquiry has two components: an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the Constitution and a subjective one that focuses on the alleged wrongdoer's mental state. *See id.* at 7-8.

The Court will look to five nonexclusive, so-called *Hudson* factors to make this determination: "'1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response.'" *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)). The core inquiry focuses on the nature of the force used; a plaintiff need not show that his injuries were significant, although the extent of the injury may provide some indication of the amount of force applied and may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *See Wilkins v. Gaddy,* 559 U.S. 34, 37-39 & n.2 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

Plaintiff also asserts that all the defendants now moving for summary judgment on the affirmative defense of qualified immunity – as well as other defendants – failed

to intervene to prevent alleged excessive force by others. *See, e.g.,* Dkt. No. 133, ¶¶ 72-79. The failure to protect an inmate from the use of excessive force by others can also be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995); *Ryan v. City of Fort Worth, Tex.*, No. 4:07-cv-310-A, 2009 WL 577284, at *5 (N.D. Tex. Mar. 5, 2009) ("An officer may be liable under 42 U.S.C. § 1983 if he is 'present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force.'" (quoting *Hale*, 45 F.3d at 919)).

But "this 'bystander' liability obtains only if the bystander defendant had reasonable opportunity to intercede and prevent the constitutional violation." *Blacke v. City of Galveston, Tex.*, No. 10-cv-388, 2014 WL 794025, at *8 (S.D. Tex. Feb. 27, 2014) (citing *Spencer v. Rau*, 542 F. Supp. 2d 583, 594 (W.D. Tex. 2007) (relying on *Davis v. Rennie*, 264 F.3d 86, 97-98 (1st Cir. 2001) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it"))). The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *see also Terrell v. Castleberry*, Civ. A. No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate..... The rationale underlying the bystander liability theory is that a bystanding

officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.").

Thus, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Malone*, 2014 WL 5781001, at *16 (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

Plaintiff further alleges that all the defendants now moving for summary judgment on the affirmative defense of qualified immunity – as well as other defendants – conspired to violate 42 U.S.C. § 1983. *See, e.g.*, Dkt. No. 133, ¶¶ 80-97.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy is not actionable without an actual violation of section 1983.'" *Hale*, 45 F.3d at 920 (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 445 (5th Cir. 1992)); *see Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. Aug. 8, 2012) (per curiam) ("Regardless of whether or not [a defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on him through his alleged membership in [a] conspiracy." (citing *Hale*, 45 F.3d at 920-21)); *see also Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) ("Section 1983 does not provide a cause of action for conspiracy to deny civil rights unless there is an actual violation of civil rights." (citing *Hale*, 45 F.3d at 920)).

"The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999); *accord Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

"To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). "[M]ore than a blanket of accusation is necessary to support a § 1983 claim." *Id.* "'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (quoting *Arsenaux*, 726 F.2d at 1024); *see Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) ("A conclusory allegation of conspiracy is insufficient. Specifically, plaintiffs must identify an illegal objective of the agreement among [the alleged conspirators]." (citation omitted)); *see also Hailey v. Savers*, 240 F. App'x 670, 673 (5th Cir. July 18, 2007) (per curiam) ("conclusional allegations [are not] facts sufficient to support a conspiracy claim" under Section 1983 (citing *Rodriguez*, 169 F.3d at 222; *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990))).

<u>Excessive Force</u>

Plaintiff alleges that the six detention officers added in or identified through the second amended complaint – Defendants Runnels, Parten, Poe, Campise, Pillow, and Coffey – subjected him to cruel and unusual punishment in violation of the Eighth

Amendment through the use of unreasonable and unnecessary force. *See, e.g.,* Dkt. No. 133 at 16-17.

While a court must "'examine the actions of defendants individually in the qualified immunity context,'" *Kitchen v. Dallas County*, 759 F.3d 468, 478 (5th Cir. 2014) (quoting *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)), Plaintiff's factual allegations generally support that five of these six detention officers – all but Officer Pillow – subjected Plaintiff to excessive force after he was already restrained. *See* Dkt. No. 133, ¶¶ 24-27 (Officer Runnels and/or Officer Parten tasered Plaintiff and then jumped on top of him and twisted his harm and dislocated his shoulder after Plaintiff was already restrained by Officer Hammonds); *id.*, ¶¶ 29-32 (Officer Poe and Officer Campise beat on Plaintiff and twisted his fingers after Plaintiff was already secured in a restraint chair); *id.*, ¶¶ 45-46 (Officer Coffey grabbed Plaintiff and slammed him onto the floor after Officer Sellers had done the same).

Regardless which excessive force standard applies – whether under the Fourth Amendment or the Eighth Amendment – "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to use of force." *Kitchen*, 759 F.3d at 479 (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that a law enforcement officer "should have known" that a certain degree of force was impermissible after an arrestee had already been "restrained and subdued" and "was not resisting arrest or attempting to flee"); *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been

subdued."); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."); *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1394-95 (8th Cir. 1997) ("We agree that the law was well established that striking an unresisting inmate ... in the head while four other officers were restraining his limbs ... is a violation of the Eighth Amendment[ ]....")).

Thus, the established applicable law "clearly encompassed the type of behavior [alleged in the operative complaint against these five detention officers] at the time of the events relevant to this case" – July and August 2010. *Kitchen*, 759 F.3d at 479 (holding that as of January 2010, "[n]umerous judicial authorities [had] long provided that the use of force against an inmate is reserved for good faith efforts to maintain or restore discipline, rather than for the purpose of causing harm" (citations omitted); *cf. id.* ("Even though there may be 'notable factual distinctions between the [relevant] precedents' and the present case, 'the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" (quoting *Hope v. Pelzer*, 536 U.S. at 740; *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))); *id.* at 479 & n.30 (rejecting "a per se rule that no force may ever be used after an inmate has been subjected to measures of restraint – particularly if the effect of the restraint is only partial" but nevertheless concluding that there, similar to here, the defendants "had reasonable warning that kicking, stomping, and chocking a subdued inmate would violate the inmate's constitutional rights under certain circumstances").

-14-

Plaintiff also claims that Officer Pillow used excessive force against him. *See* Dkt. No. 133 at 16-17. As to Officer Pillow, however, Plaintiff has merely alleged that this defendant was present and failed to intervene when Plaintiff was subjected to gratuitous force. *See id.*, ¶¶ 31 & 32 ("All the while, Nurse Kate, and Officers Poe, Campise, and J. Pillow watched Merry and could have taken reasonable steps to stop the violent conduct being inflicted on Plaintiff, but they did not.... Officer J. Pillow was also present, having heard and/or witnesses the assaults by Merry, Poe, and Campise, but failed to take reasonable steps to end the beatings."). These allegations are insufficient to negate Officer Pillow's assertion of qualified immunity as to the excessive force claim. *See Fleming*, 497 F. App'x at 388; *Backe*, 691 F.3d at 648; *Wicks*, 41 F.3d at 995. Accordingly, Officer Pillow's motion for qualified immunity as to the excessive force claim should be granted, and this claim against this defendant should be dismissed.

Excessive Force – Failure to Intervene

Plaintiff alleges that all eights defendants added in or identified through the second amended complaint – Defendants Runnels, Parten, Poe, Campise, Pillow, Coffey, Nurse Kate, and Med Tech – failed to take reasonable measures to protect him from another's use of excessive force. *See* Dkt. No. 133 at 19-20.

In July and August 2010, the law was clearly established that a corrections officer could be liable under a bystander liability, or failure to intervene, theory if he or she is "present at the scene and does not take reasonable measures to protect a

[detainee] from another officer's use of excessive force." *Hale*, 45 F.3d at 919. But, at the time,

> [i]t was also established that mere presence is not enough, and that an officer must have a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it for the duty to intervene to arise.... And ... these officers were on notice that courts consider both the duration of the alleged use of excessive force by other officers, and the location of the suspect relative to the bystander officers.

*Malone*, 2014 WL 5781001, at *19 (citing *Hale*, 45 F.3d at 919; collecting other cases; discussing clearly established law as of July 2009).

Plaintiff alleges that, on July 27, 2010, it is unclear which defendant – Officer Runnels or Officer Parten – tasered him after he was already restrained by Officer Hammond. *See* Dkt. No. 133, ¶¶ 26-27. Plaintiff believes that Officer Runnels tasered him after he was already restrained and that, thus, Officers Hammond and Parten failed to intervene to prevent excessive force by Officer Runnels. But Officer Parten has taken credit for tasering Plaintiff. If that is true, Plaintiff alternatively contends that Officers Hammond and Runnels failed to intervene to prevent excessive force by Officer Parten. *See id.*

Plaintiff thus alleges that Officer Parten (along with Officer Hammond) failed to protect Plaintiff from Officer Runnels's use of excessive force or, alternatively, Officer Runnels (along with Officer Hammond) failed to protect Plaintiff from Officer Parten's use of excessive force. But, even if the Court accepts this pleading in the alternative for purposes of resolving this motion, Plaintiff has failed to allege facts to establish (1) more than the mere presence of the non-restraining, non-tasering officer

-16-

(whether that is Officer Parten or Officer Runnels) and (2) that this officer had a "reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it." *Malone*, 2014 WL 5781001, at *19. Thus, viewing the role of the non-restraining, non-tasering officer (again, whether that is Officer Parten or Runnels) in the light most favorable to Plaintiff, Plaintiff has failed to "plead specific facts that both allow the court to draw a reasonable inference that [the non-restraining, non-tasering officer] is liable [under a theory of excessive force – bystander liability] and that defeat a qualified immunity defense [as related to that theory of liability]." *Backe*, 691 F.3d at 648. The Court, accordingly, should grant Officer Parten and Officer Runnels summary judgment as to their affirmative defense of qualified immunity as to a bystander liability theory of excessive force, and the claim of excessive force – failure to intervene against Officer Parten and Officer Runnels, *see* Dkt. No. 133, ¶¶ 72-79, should be dismissed.

Plaintiff next alleges that, after Officers Hammond and Runnels secured Plaintiff into a restraint chair, and after Officers Poe and Campise attempted but failed to remove the cuffs also restraining Plaintiff, Officer Merry maliciously and violently beat him and suffocated him into unconsciousness while Officers Poe and Campise first stood by and then participated in the beating. *See id.*, ¶¶ 29-32. Plaintiff alleges that Officer Pillow "was also present, having heard and/or witnesses the assaults by Merry, Poe, and Campise, but failed to take reasonable steps to end the beating." *Id.*, ¶ 32; *see id.*, ¶ 33 (Officer Pillow "did not file a report based on the use of force he had witnesses, although observation logs established his presence at the

time of this incident, and the incident was lengthy enough and Plaintiff's screams loud enough that Pillow had adequate time to intervene.").

Plaintiff thus alleges that Officers Poe and Campise failed to intervene to protect Plaintiff from Officer Merry's use of excessive force and then, in fact, participated in the exercise of excessive force, beating up on an already restrained prisoner. Viewed in the light most favorable to Plaintiff, these allegations allow the Court to reasonably infer that Officers Poe and Campise are liable for excessive force under a failure to intervene theory. This is, Plaintiff has alleged specific facts to establish that Officers Poe and Campise were more than merely present as Officer Merry allegedly beat Plaintiff. By alleging that Officers Poe and Campise chose to participate in the alleged beating, Plaintiff has alleged that both officers "'acquiesced in' the alleged constitutional violation" by Officer Merry, allowing the Court to infer that they reasonably realized the excessive nature of the force by Officer Merry and had a reasonable opportunity to stop it but, instead, chose to participate in it. *Whitley*, 726 F.3d at 647 ("In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." (citing *Hale*, 45 F.3d at 919; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (premising liability on senior officer's knowledge of, and acquiescence in, treatment of victim); *Peavy v. Dallas Indep. Sch. Dist.*, 57 F. Supp. 2d 382, 390 n.4 (N.D. Tex. 1999) (*Hale* inapplicable where defendant did not acquiesce in any conduct violating plaintiff's constitutional rights))); *see also Lewis v. Mollette*, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010) (denying motion for summary judgment on

failure to intervene claims after rejecting defendants' contention that correctional officer defendants "cannot be both responsible for the alleged excessive force and also responsible for failing to intervene at the same time" because disputed facts could lead a reasonable jury to find defendants liable under either theory).

Turning to Officer Pillow, Plaintiff has alleged more than the defendant's mere presence. *See* Dkt. No. 133, ¶¶ 32 & 33; *contra Malone*, 2014 WL 5781001, at *16 ("Mere presence at the scene of alleged use of excessive force ... does not give rise to bystander liability." (citing *Whitley*, 726 F.3d at 646-47; collecting other cases)). Plaintiff's allegations that observation logs established Officer Pillow's presence at the time of the excessive force and that the length of the excessive force incident, along with Plaintiff's loud screams, are enough for the Court to reasonably infer – for purposes of this motion – that Officer Pillow had a reasonable opportunity to prevent the harm to Plaintiff and chose not to act. *See* Whitley, 725 F.3d at 646.

As to Officer Coffey, Plaintiff alleges that, on August 1, 2010, he was first assaulted by Officer Sellers. *See id.*, ¶ 45. He then states that he "briefly passed out in the [course of the] beating [by Officer Sellers] and awoke to the beating stopped, so [he] slowly and painfully attempted to get to his feet ... as Officer Chris Coffey appeared next to Plaintiff. Coffey helped Plaintiff to his feet and stabilized him from behind, acting as though he was going to restrain Plaintiff with cuffs." *Id.* Instead, Plaintiff alleges, Officer Coffey then assaulted him along with Officer Sellers. *See id.*, ¶ 46.

Similar to the failure to intervene theory pressed against Officers Parten and Runnels – viewing the allegations against Officer Coffey in the light most favorable to

-19-

Plaintiff – the Court cannot reasonably infer Officer Coffey is liable under the theory that he failed to intervene to protect Plaintiff from Officer Sellers's alleged excessive force. Plaintiff has not alleged that Officer Coffey was present when Officer Sellers allegedly first beat him. Instead, Plaintiff alleges that he awoke from that beating to see Officer Coffey, who then allegedly beat Plaintiff further and was joined in that beating by Officer Sellers. Accordingly, as to a theory of liability for excessive force under which Officer Coffey allegedly failed to protect Plaintiff from Officer Sellers's alleged force, because Plaintiff alleges that Officer Coffey was not present until Plaintiff awoke from the initial beating by Officer Sellers, the Court cannot infer that, at a minimum, Officer Coffey had "a reasonable opportunity to prevent [that] harm." *Whitley*, 726 F.3d at 646. The Court, accordingly, should grant Officer Coffey summary judgment as to his affirmative defense of qualified immunity as to a bystander liability theory of excessive force, and the claim of excessive force – failure to intervene against Officer Coffey, *see* Dkt. No. 133, ¶¶ 72-79, should be dismissed.

Turning finally to the non-officer defendants – Nurse Kate and Med Tech – it has not been shown that in July and August 2010 (or even today) that the law was, or is, clearly established that non-correctional officers may be held liable for excessive force in violation of Section 1983 because they failed to intervene to protect an inmate, detainee, or arrestee from the use of excessive force by an officer. *See Malone*, 2014 WL 5781001, at *16 ("In *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), ... the Fifth Circuit held that *Hale* is consistent with other circuits' determination that an <u>officer may be liable</u> under § 1983 under a theory of bystander liability where the officer '(1)

knows that a <u>fellow officer</u> is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" (quoting *Whitley*, 725 F.3d at 646 (citations omitted)) (emphasis added)).

The parties have not addressed whether the liability of non-correctional officers under a bystander liability theory of excessive force should be analyzed differently than the liability of correctional officers under the same theory. But the Court has an obligation to not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether [a particular defendant] acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (quoting *al-Kidd*, 131 S. Ct. at 2084). That is, to provide a defendant "fair warning," the right at issue must be "defined with sufficient clarity to enable" – here, a reasonable non-correctional officer employee – "to assess the lawfulness of" his or her failure to intervene to prevent a plaintiff from excessive force asserted by a correctional officer. *Morgan*, 659 F.3d at 372 (citations omitted).

The undersigned could locate neither controlling nor persuasive authority in this circuit. But the United States Court of Appeals for the Third Circuit, for example, has refused to extend the failure to intervene theory to medical employees working within a prison. As one district court in that circuit has explained,

> although *Smith*[ *v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002),] announced that corrections officers have a legal duty to intervene and that an inmate can maintain a suit under § 1983 if they fail to do so, the court clearly grounded its decision in the fact that a corrections officer, like a police officer, is a law enforcement officer, sworn to uphold the law, and authorized to use force if necessary. *Id.* As a result, the court has expressly declined to extend its holding in *Smith* beyond correctional

officers to impose a duty to intervene upon medical employees working within a prison setting. Therefore, where the defendant is a medical professional, and not a correctional officer, no such special duty exists, and an inmate may not sustain a failure to intervene claim. Thus, for example, the United States Court of Appeals for the Third Circuit has held that a failure to intervene claim may not be maintained against a prison nurse, affirming the district court's dismissal of an inmate's claim against a nurse for failing to intervene in a use of force episode involving other corrections staff, because "she [was] not a corrections officer and thus did not have a duty to intervene under the rule acknowledged in Smith." *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008). At least one court from within this district has subsequently followed *Ali* and dismissed claims brought against prison medical personnel for failure to intervene in the alleged use of force by law enforcement officials. *See, e.g., Harris v. Hershey Med. Ctr.*, No. 1:08-cv-843, 2009 WL 2762732, *6 (M.D. Pa. Aug.27, 2009). In sum, although corrections officers may be liable under § 1983 if they fail to intervene in an assault upon an inmate by other corrections officers, prison medical officials, who are not law enforcement officers, have no legal duty to intervene on behalf of an inmate in the midst of physical altercations with staff, and thus cannot be liable under § 1983 for alleged violations of the Eighth Amendment predicated on their alleged failure to intervene or stop the use of force by corrections officers or prison officials.

*Smith v. Donate*, Civil Action No. 4:10-CV-2133, 2012 WL 1899323, at *6 (M.D. Pa. Apr. 5, 2012), *rec. adopted*, 2012 WL 1899318 (M.D. Pa. May 24, 2012) (dismissing failure to intervene claim against a doctor who was a private contractor providing medical services to inmates); *see Holmes v. Fink*, No. 1:13-cv-00012-JHH-TMP, 2014 WL 347625, at *3 (N.D. Ala. Jan. 27, 2014) (no bystander liability for nurse where there were "no allegations which suggest [she] was in a position to intervene" where the act by a correctional officer "was an isolated incident, which took place without any warning or notice"); *White v. Clark*, No. 9:12-CV-0986 (NAM/RFT), 2012 WL 5877160, at *6 (N.D.N.Y. Nov. 20, 2012) ("defendants Smith and Rushford are identified as nurses, and there is nothing to suggest that they have the authority to intervene while

correctional officers are using force on an inmate" (collecting cases)). *But see Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) ("the precedent holding police officers and correctional officers liable for failure to intervene was sufficient to place the nurse who caused the conflict[ – which lead to plaintiff being beaten by hospital security officers for ten minutes – ]on notice that she had a duty to protect plaintiff while under her charge").

At the very most, while the majority of the cases examined go the other way, the undersigned's review of the caselaw has revealed persuasive authority to support that, under certain circumstances, a non-officer employee may be liable under a failure to intervene theory. But, as stated above, while "'a case directly on point'" is not necessarily required to "conclud[e] that the law is clearly established, '[ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S. Ct. at 2085). That is clearly not so as to holding a non-corrections-officer liable for Section 1983 excessive force because he or she failed to intervene to protect a plaintiff from excessive force imposed by a corrections officer. The Court should grant Nurse Kate and Med Tech summary judgment as to their affirmative defense of qualified immunity as to a bystander liability theory of excessive force, and the claim of excessive force – failure to intervene against these two defendants, *see* Dkt. No. 133, ¶¶ 72-79, should be dismissed.

Conspiracy

In *Hill v. City of Seven Points*, 31 F. App'x 835, 2002 WL 243261 (5th Cir. Jan. 17, 2002), the United States Court of Appeals for the Fifth Circuit recounted its

authority concerning "how qualified immunity bears on a § 1983 conspiracy claim." 2002 WL 243261 at *8 (discussing *Pfannstiel*, 918 F.3d at 1187-88; *Hale*, 45 F.3d at 920-21). In *Pfasnnstiel*, the Fifth Circuit concluded that "a court should 'first ... determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff.' If the action was not objectively reasonable, a court should only then 'look to whether the officer's actions were taken pursuant to a conspiracy.'" 2002 WL 243261, at *8 (quoting 918 F.2d at 1187). Similarly, in *Hale*, after recognizing its holding in *Pfasnnstiel*, the Fifth Circuit concluded that, "where all defendants were entitled to qualified immunity from the underlying § 1983 claims, 'the conspiracy claim [was] not actionable.'" *Id.* (quoting 45 F.3d at 920-21).

Here, as explained above, the undersigned has concluded, first, that some state action – as alleged – has caused Plaintiff harm and, second, that not all defendants now so moving are entitled to qualified immunity from the underlying Section 1983 claims.

Plaintiff, moreover, has done more than merely allege a conspiracy in a conclusory manner. He has alleged that all defendants conspired to conceal the alleged excessive force incidents and failure to intervene in those incidents and also has alleged overt acts by some co-conspirators in furtherance of the Section 1983 conspiracy – the filing of false reports, *see, e.g.*, Dkt. No. 133, ¶¶ 82 & 83 (identifying, among others, Officers Runnels, Parten, and Coffey), and lying to assist in a cover-up, *see id.*, ¶ 95 (alleging that following the excessive force incident on August 1, 2010, Med Tech lied regarding Plaintiff not being dressed to assist in the cover-up).

Thus, at this stage of the case where only qualified immunity is at issue, the undersigned cannot say, based on Plaintiff's nonconclusory allegations, that any defendant is entitled to qualified immunity on a Section 1983 conspiracy theory. *Cf. DeLoach v. Bevers*, 922 F.2d 618, 621-23 (10th Cir. 1990) (denying qualified immunity to police officer on Section 1983 claims in light of deliberate conduct amounting to coverup). Further, any argument that a particular co-conspirator did not actually engage in the alleged cover-up would be misplaced, where, even if summary judgment ultimately may be appropriate based on an inability to prove the facts essential to recovery under a conspiracy theory, this "had nothing to do with the qualified immunity defense." *Haverda*, 723 F.3d at 599.

## Recommendation

The pending motion for summary judgment on the issue of qualified immunity [Dkt. No. 145] should be granted in part and denied in part. Officer Pillow should be granted qualified immunity as to Plaintiff's claim that he used excessive force against Plaintiff in violation of 42 U.S.C. § 1983, and that claim as against this defendant should be dismissed. Officer Parten, Officer Runnels, Officer Coffey, Nurse Kate, and Med Tech all should be granted qualified immunity as to Plaintiff's claim that they failed to take reasonable measures to protect Plaintiff from another's use of excessive force, in violation of Section 1983, and that claim as against these defendants should be dismissed. Otherwise, the motion should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 27, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE